WAG Acquisition, LLC against WebPower. Mr. Abramson, when you're ready. And it would be helpful to point out distinctions between these cases. Okay, let me, may it please the court again. Now we're on 1619. Yes. Appeal, which is a different embodiment arising out of a common disclosure. So as I emphasized in the argument on 1617, we were talking there about a pull embodiment. Here on this appeal, we're talking about really what's a push embodiment, where the server's in control of what's being sent to the client. And now the server has to control the process of sending to the client at a great enough speed to be able to maintain the playback without dropping. So it needs to do two things. It needs to get a fast startup, so the claims describe an initial, claim one, the base claim describe an initial transfer of a buffer full of information to the client at faster than the playback rate. That's so the client can get a fast startup. And then after that, the server has to be able to avoid either overflowing or underflowing, having the client run dry of material to playback. And whereas in the patent we discussed in the prior appeal, the client said, the client was in charge of telling the server when it needed more information. My buffer's getting low, send me another piece. On this side, it's up to the server to figure that out. So that's the difference. This is server-moderated, and the other patent, the other embodiment was client-moderated. So the issue on this appeal concerns motivation to combine. There are two obviousness combinations at issue. There's Chen and its file history, plus, now we have two different combinations, Willowbeak, Chen plus Willowbeak, and Chen plus Canon. Both the Chen prior art as well as the 839 patent have the same objectives, which is to achieve a smooth and uninterrupted delivery of program stream to overcome the problem of erratic delivery of data packets over a network such as the internet. Because the whole premise of these patents is that you've got a transmission channel that's faulty, and that you have to find some way to get a smooth transmission over a faulty channel. Because if you didn't have a faulty channel, you wouldn't need either of these inventions, you would just take the data as it comes in and send it byte by byte down the channel and everybody would be happy, there would be no problems. The reason for both Chen and the present invention is that it doesn't work that way. You've got to do something to overcome the vagaries of the transmission channel. That's the setting here. And that's really, any motivation is, you've got to look back to what it is they're trying to do with this technology. Only Chen, Chen only deals, now here's a key point, Chen only deals with streaming pre-recorded program, which differs from a live feed. The claims involved in this appeal involve transmission from a live feed. In Chen, you're streaming a pre-recorded program, and in these claims, you have a live feed. The difference is that when you have a pre-recorded program, the server can reach back into the program and get anything it wants out of that data to send it down the line. In a live feed, all you get is what's arrived already. You can't look forward in time. You can't say what's gonna come three seconds from now because we're not there yet. And that's the fundamental difference between live and pre-recorded. So, what happened in this case is that they used Chen as the base references for an obviousness combination. And they took two embodiments, Wilbeek and Cannon, and grafted a live feed onto the front of Chen in place of the pre-recorded medium that was native to Chen. The problem here is that Chen was never designed to handle a live feed to begin with, and incorporates many operations that presume possession of the entire recorded program. Putting a live feed in a system meant to be into stream pre-recorded programs is not as straightforward as the appellee would like to represent it. The evidence is uncontroverted that the combinations of Chen plus Wilbeek and Chen plus Cannon will quickly run out of buffer, that is freeze or go blank or go silent in the event of interruptions in the delivery channel. Are you sure that's uncontroverted? Pardon me? Are you sure that's uncontroverted? You said that that's uncontroverted, and I did not get that from the... Well, there's attorney argument, but there's no competent evidence. There's no expert that said otherwise. Our expert said that that would happen. There's nobody who came in and said otherwise. There's a lot of attorney argument. There's a lot of conclusions by the board to this effect, but there's no evidence. Some of the things the board suggests is that it's okay. There might be some disruption. There might be some lag. It might not be perfect, but you still obtain the advantage of having Chen then be able to provide a live broadcast. How do you respond to that? Judge, it's no better than the prior art. Once you've run down the initial... Apologies, what did you say? It's no better than the prior art. Does it have to be better than the prior art? It has to be. There has to be some motivation to come up with something better than the prior art, because why bother? What if it's a motivation to have Chen not just have pre-recorded broadcast, but also have live broadcast? Sorry, what was what? Well, why use Chen? If you don't have to worry about interruptions on your channel, why bother with Chen? You don't need Chen. All you need to do is plug your microphone into your computer and have it send it byte by byte through port 80, and you're done. You don't need these inventions. If you have a... The whole motivation for these inventions is that your channel is not gonna let you do that. You're gonna have... The question, though, is not the motivation for your patented invention, right? I mean, the question is whether there's substantial evidence to support the board's conclusion that a person of ordinary skill in the art would have been motivated to modify Chen in order to provide the live broadcast as taught by one of the secondary references. Isn't that the right inquiry? Right, but the problem is that by making this... Chen is perfectly able to deal with interruptions on the channel because Chen has rush mode. Chen says that if you get into a situation where the client buffer runs low, the client buffer sends a rush command to the server. Servers, rush me some data so I can reconstitute my buffer so I don't run out of gas, don't run out of data. And Chen works to do that. Now, when you come along and draft a live feed onto that like they have done here, that mechanism no longer works. You break Chen because you don't have the data to rush. Once the initial buffer is depleted and you send a rush command, there is nothing to rush. So you can't... So the problem with motivation here is this is one of those cases where the combination undoes the ability of the base reference to solve the problem. That's fundamentally what the problem is. The board did not address that. Board came up with these explanations about how the user could push the pause button, which is really, that's not a solution to the problem. That's giving up. That's saying, oh, well, there's gonna be interruptions on the channel, so I'll just hit pause and wait till everything straightens out and then listen again. That doesn't address the motivation issue. Why would a person of skill in the art be motivated to make a combination that predictably is going to undermine the ability of the prior art to do what it was intended to do? That... How did the resulting combination differ from the claimed invention? The resulting invention also would have some of these challenges with ultimately somewhere perhaps during a playback deplete the server buffer. Well, the disclosure of the claimed invention does explain... But the claimed invention. The claimed invention. But does somebody... Is somebody motivated to modify... Is somebody... The claim does not spell out the additional part. This particular claim does not spell out the additional part that allows the server to recover from an interruption. It just goes so far as to say detects an interruption. And claim two, which is not an issue in this appeal, gets into the recovery part. Right, so my point is it appears that the claim one claimed invention is in the same situation as the combination of Chen and Willowbeak. Right, but my argument is that somebody is not really motivated... Somebody's motivated to solve a real world problem, not to reproduce claim one. And I agree with you, claim one says what it says, but the question still is, is it obvious? We're gonna go back to the table. It sounds like your argument is basically that nobody be motivated to make this combination because it'd be inoperable. But the board found otherwise, that there would be a basis for it to be operable. It might not be optimal. It might not be as clean of a transmission and playback as say with downloading something, I don't know, a pre-existing stored file, but it would still be good enough and it would still be attractive that people would want to be able to stream not only pre-recorded data, but also stream a live broadcast. Well, I would argue that our argument is not that it's inoperable. Our argument is that it renders the prior art incapable of performing its intended purpose, which is overcoming, which is sending smoothly over the internet. And it is not a sufficient motivation. We argue it's not a sufficient motivation for somebody to put together something that can't even do what the prior art did. That is, to make a modification that impairs the ability of the prior art to meet its intended purpose, that is cited as a situation that counters motivation. So to say that somebody would be motivated to make something that doesn't even solve the problem that the prior art solves, in the real world, nobody would do that. That's not a combination that a person of skill in the art would seek to do because it does not even solve the problem that was solved by what he started with. It leads to an unsatisfactory result that doesn't meet the objects of even the prior art that he starts with. And the risk case law which we cited, which says that a negative to motivation is a modification that impairs the ability of the prior art to function, to perform its intended purpose. Okay, let's go from the other side and we'll save you a rebuttal. I'll save you a remainder of my time, thank you. Thank you. Mr. Falkner. May it please the court. There is substantial evidence to support the board's finding that there would be a motivation to combine these references. Chen describes a system for pacing delivery of multimedia content that's packetized. It describes using a stored, pre-stored video, but it does state that it can perform its necessary calculations for the pacing on the fly or during transmission. The Willowbeak reference then states a motivation. It says, more recently, streamed audio and video have become available from both stored and live sources on the web. Willowbeak discloses a pre-stored system, but then it also, in another section, discloses a way to provide live video to this type of pre-stored system. There's evidence in the form of expert testimony that it would be obvious to modify the references, modify Chen to use Willowbeak's provision of live data so that Chen could provide live video as well as pre-stored video. He stated that doing so would be nothing more than combining the teachings in a known way to achieve predictable results. It would be the use of a known technique, Willowbeak's capture station and the circular buffer queue that could provide a buffer, a pre-made buffer of live data to improve similar known devices, and that would be Chen's system for storing streaming video. Now the system can provide both live and streaming video. I'm sorry, live and pre-stored. So whether it would have been obvious to an expert, the question is whether it would have been obvious to a person of ordinary skill. That's correct. The expert simply states the reasons that one would combine them. He did opine on what the level of ordinary skill in the art would be. He says it was obvious to him. He says it would have been obvious. That's correct. He didn't, his statement there does not say to one of ordinary skill in the art. I believe that's correct. But the reasons to provide are still there. They're both in Willowbeak, which itself provides a market need for the ability to provide both live and pre-stored video. And then according to the basic teachings of KSR, this is a situation where we're taking a known solution and applying it to similar known devices, a known improvement to similar known devices. The primary issue seems to be, the issue that Fatt and Oner raises, seems to be the fact that they don't think it's going to be reliable enough delivery. That given enough time, we're going to run out of the buffer. So Willowbeak describes a buffer that's several seconds. And in the combined system, Willowbeak's going to rush a portion of the buffer over to Chen's client buffer. And then Chen continues to operate as it always would. Chen has the remainder of the server buffer and the client buffer, and it paces transmission between those two buffers. Now it is true, if you have enough interruptions, you'll always run out of buffer space. That would always happen. And Fatt and Oner seems to say, well, a few seconds, that's not enough. There's no evidence of why that would not be enough of a buffer. This video would continue to play. Chen would continue to do its high-level, low-level pacing until you experience more than that amount of interruptions, more than a few seconds of interruptions. For many videos, that might be completely adequate. There's no evidence that that's somehow inadequate. But there is evidence in the record that a few seconds at the time was considered enough of a buffer. WillowBeak itself is a live system at this time, and WillowBeak chose a few seconds of buffer for its live embodiment. So that's evidence that at the time, WillowBeak believed a few seconds was the proper amount of buffer size. And that's substantial evidence in the record to support that this idea that it's somehow too little, which has no evidence, is unsupportive. I guess WillowBeak doesn't have the rush mode. Is that right? WillowBeak doesn't have a rush mode to do the initial fast startup. But in Chen, you have a portion in the server buffer and a portion in the client buffer. It does rush some to start up, but in both instances, the amount of buffer you have is the amount of buffer you have. In WillowBeak, it's all at the server. So if you have three seconds of buffer, that's three seconds of delay you can account for. In Chen, even if that's split between the two buffers and you've done the fast startup, the amount of buffer that you have is still the amount of interruptions you can confer, that you can account for. And the same would be true of the Inventive system. Whatever size that buffer is, that's how many seconds you have to buffer before you're going to start experiencing some kind of interruption. That's just a fact of why video, we can't generate new video faster than it's being made. There's also a discussion that Chen, that we're throwing out the teachings of Chen. And in this combination, the teachings of Chen are not thrown out. And the expert says it's going to continue to operate according to its known teachings. So Chen describes that you have a low watermark and a high watermark on the client buffer. You always try to keep the buffer in the middle of that. Well, with WillowBeak server buffer, you have a few seconds of buffer. You'll rush a portion of it until you're above the low watermark. You may still have a portion in the server. And then Chen's going to do its pacing. If you run low in this client buffer, you're going to rush more because you're below the low watermark. And so you'll rush more to the extent you can. And if you go to the high watermark of Chen, if you're sending more packets that are being viewed, well, then it will back up at the server buffer. That would still happen. So everything would continue to operate as it does in Chen. Now, Chen doesn't say what are the exact situations where the client buffer fills to the high watermark. Because it is kind of a funny thing. In Chen, when you're in between these two watermarks, you're sending at the playback rate. And so you're sending items at the playback rate at the same rate they're being watched. You should never go above the high watermark. You should be watching it at exactly the same time. So it's not entirely clear from Chen. Chen's silent. It just says, look, if that buffer does fill because you're sending more than you're watching, well, then we're going to stop. Pause transmission, let it build up on the server buffer. We did ask patent owner's expert about the Chen disclosure. And so at the appendix on page 938, we said in Chen, what would cause the system to go in pause mode? What would cause it to go above the watermark, the high watermark? And he said, well, when the buffer's above the high watermark, it goes into pause mode. Why would the client buffer in Chen fill to the high watermark? He said, one possible reason is there's more incoming packets per period of time than outgoing. We said, okay, but what situation in the real world would cause more incoming packets to the buffer than outgoing packets? And he said, for example, if the client hits a pause button, then at that time, you're not using the client buffer. You're still sending data at the normal rate. It will go to the top, and at that point, it will pause. So he said, that would cause the buffer level to rise, possibly above that mark. So the Chen pause scenario is equally applicable in our combined reference. If someone has Willowbeak, and the Willowbeak buffer's there and it's pacing transmission to Chen, at about the playback rate, as Chen teaches, if someone pauses it, it will fill above the high watermark. So you continue to use all of Chen's features. You're using the Chen low watermark to rush more data if you have it. You're using the high watermark to pause so things don't overbuild at the client buffer and use a server. So it's simply not the case that in the live embodiment, we throw out any teachings of Chen. Although it should be noted, even if there were some high watermark, it wouldn't matter. There can be trade-offs when you make combinations. And here, it's undisputed Chen would now be able to serve live video. The fact that all of Chen's schedule would be used when it's serving live video, it's still an improvement to the system that previously could only do pre-stored video. And finally, it's also been noted that this is not a claim requirement. Some of these requirements are in other claims. And there's no need for this combined system to meet every requirement of other claims. And the combined system also doesn't need to meet the objectives of the patent. The analysis is simply whether, looking at these two references, there is substantial evidence of a motivation to combine them. And then once they're combined, do they meet all the claim elements? That's the analysis. On the second issue, there was some reliance by the board on estoppel, and whether the combined references would meet a particular claim limitation. When you are talking about whether Chen teaches a claim limitation, isn't that a different question than whether Chen, in view of Willoughby, teaches a claim limitation? And can we really apply estoppel in that situation? So it could be a different question if that, if somehow we weren't using that aspect of Chen, or the combination causes some change in how that functionality of Chen. Let's say that I didn't agree with the equitable estoppel argument, not that one, just the estoppel, sorry, argument, did the board have an alternative rationale for its conclusion? It did, the equitable estoppel was one of multiple grounds for finding that it was not persuasive that the combined references would not, that there would be no motivation to combine. So yes, there were alternate grounds. Have you formed a conclusion as to really the validity of invoking collateral estoppel in these cases? So I think the particular argument made here, it is proper to find that it was estopped. So what was being argued was that this lost packet mechanism that had already been found to be in Chen was not met by the combined system, but the lost packet mechanism would operate the same way in the combined system as it would in Chen. Again, it's all just about, under the same limitations. You would also. And that was your expert's position, right? Correct. Okay. So, so the estoppel sort of went to the fact that the party had already, that it had already been litigated whether Chen's lost packet mechanism meets his claim element. The lost packet mechanism was not, was unaltered by the combination. Chen could still request a missing packet within whatever the size buffer was available. So here, a few seconds buffer. If we say that's the limit of the buffer, Chen can still be requesting the packets as long as they're sort of within that buffer. Chen also has a timeout mechanism. For once, it's been too long and we've got to move on, Chen stops looking for the lost packets. It would do, function the same here. It has a few seconds to try to grab that lost packet before it's going to play for the user. So I think the estoppel goes to the fact that the court wasn't going to reconsider whether that element of Chen met this limitation. And there had been no indication that that element of Chen should operate any different. And in terms of the collateral estoppel, on page 28 of the decision is where the board does go on to say even if collateral estoppel is inapplicable, they agree that Chen and Chen file history disclose the reloading limitations, the claims eight and 15. And then it goes on to explain how the combined system would operate in the same way. Any more questions? Okay, thank you. Thank you. Mr. Anderson? Yes. Just a couple of points. I believe there was mention of the 839, the 839 patent being unable to reconstitute its server buffer. And I thought I made that clear in my argument. The disclosed embodiment certainly has, it does have the capability to reconstitute its server buffer. So when the client buffer runs low, the server side, this is not in claim one, but it's the embodiment. The server side will backup data in the server buffer so that it can use that to replenish the client side. That's how it maintains the equilibrium. And the thing about the combinations here is that the rush mode in Chen doesn't work anymore because of this combination. And all that the server, Mr. Faulkner addressed that it was going to operate on the fly and do things during transmission. And that's fine. But one thing it can't do during transmission is send data that the server hasn't received yet. That's the flaw. That's the flaw in that analysis. And that's why it's going to run out of data at the client end. Now, just getting back briefly to motivation to combine. The combination here is between Chen and Willowbeak and Carmel. And the fundamental question is why use Chen? They've thrown out everything in Chen. And the thing they absolutely need Chen for here, these claims are dependent from base claims. And the base claims recites a very definite requirement that there has to be an initial transfer of a buffer load of data from the server to the client. That's initial burst that gets a fast start on the client. That's key to this. Now, you can't put together an obvious combination unless you have a reference that does something like that. That's why they need Chen. But when you look at this from an obviousness standpoint, why use Chen? There's nothing in Chen that they're relying on. They're throwing out the entire frame-based transmission mechanism in Chen. They're throwing out the rush pause, the rush pause mechanism of throttling in Chen, completely throwing that out. The basic- I didn't understand them to be throwing it out. Pardon me? I didn't understand them to be throwing it out. I understood them to be saying that you would use the Willowbeak portions and combine it with Chen. And it might have problems. It might not be perfect. It might not be as fast. It might have more disruptions. Let's look at it. The rush mode doesn't work. Once you set the- What doesn't work? The rush mode won't work once the buffer's empty. It depends on how you define what the rush mode is. The rush mode is defined in Chen as accelerating the playback, sending a batch of data from the server buffer down to the client. It's not there. It doesn't work. Oh, it has to be filled up first. Yes, it has to be filled up first. There's no need for a pause mode anymore. And it's only a normal mode, which is nothing. A normal mode is just a pass-through transmission. The entire mechanism of Chen is unnecessary to implement this combination. So why is it obvious to pick Chen to begin with? We contend that it's not. And it's not obvious to combine them because now that you've picked Chen, you now make a modification that impairs its ability to function as intended. More questions? More questions? Thank you. Thank you both. The case is taken under submission.